**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

LEAGUE OF WOMEN VOTERS OF : No. 159 MM 2017
PENNSYLVANIA, CARMEN FEBO SAN :
MIGUEL, JAMES SOLOMON, JOHN :
GREINER, JOHN CAPOWSKI, :
GRETCHEN BRANDT, THOMAS :
RENTSCHLER, MARY ELIZABETH :
LAWN, LISA ISAACS, DON LANCASTER, :
JORDI COMAS, ROBERT SMITH, :
WILLIAM MARX, RICHARD MANTELL, :
PRISCILLA MCNULTY, THOMAS :
ULRICH, ROBERT MCKINSTRY, MARK :
LICHTY, LORRAINE PETROSKY, :
:
        Petitioners :
:
:
:
      v. :
:
:
THE COMMONWEALTH OF :
PENNSYLVANIA; THE PENNSYLVANIA :
GENERAL ASSEMBLY; THOMAS W. :
WOLF, IN HIS CAPACITY AS :
GOVERNOR OF PENNSYLVANIA; :
MICHAEL J. STACK III, IN HIS CAPACITY :
AS LIEUTENANT GOVERNOR OF :
PENNSYLVANIA AND PRESIDENT OF :
THE PENNSYLVANIA SENATE; :
MICHAEL C. TURZAI, IN HIS CAPACITY :
AS SPEAKER OF THE PENNSYLVANIA :
HOUSE OF REPRESENTATIVES; :
JOSEPH B. SCARNATI III, IN HIS :
CAPACITY AS PENNSYLVANIA SENATE :
PRESIDENT PRO TEMPORE; ROBERT :
TORRES, IN HIS CAPACITY AS ACTING :
SECRETARY OF THE :
COMMONWEALTH OF PENNSYLVANIA; :
JONATHAN M. MARKS, IN HIS :
CAPACITY AS COMMISSIONER OF THE :
BUREAU OF COMMISSIONS, :
ELECTIONS, AND LEGISLATION OF :

THE PENNSYLVANIA DEPARTMENT OF  :
STATE,                          :
                                :
        Respondents             :


## CONCURRING AND DISSENTING STATEMENT

**JUSTICE BAER**                              **FILED:  January 22, 2018**

I join the *per curiam* order (PCO) to the extent it concludes that the districts as set forth by the Congressional Redistricting Act of 2011 are unconstitutional.  I also concur in the PCO's invitation to the Legislature and Governor to craft constitutional maps, recognizing that redistricting is a legislative function.  *Butcher v. Bloom*, 203 A.2d 556, 569 (Pa. 1964) ("The task of reapportionment is not only the responsibility of the Legislature, it is also a function which can be best accomplished by that elected branch of government.").

I find myself in an awkward position regarding the PCO's directive that the primary election shall proceed with new maps on May 15, 2018.  I understand the Court's desire to follow this schedule as it is arguably counterintuitive to believe that the current map is unconstitutional and, nevertheless, direct its usage in the May 2018 election.  There are, however, other forces at play.

When faced with an unconstitutional map, courts should determine "whether the imminence of [the primary and] general elections requires the utilization of [a prior plan] notwithstanding [its] invalidity" or whether a constitutional map "can practicably be effectuated" in time for the pending election.  *Id.* at 568 (*quoting Lucas v. Forty-Fourth General Assembly of State of Colorado*, 377 U.S. 713, 739 (1964)) (internal quotation marks omitted).  In *Butcher*, we allowed the election to proceed employing maps that we had concluded were unconstitutional to avoid "[s]erious disruption of orderly state election processes and basic governmental functions."  *Id.* at 568 - 69.

As in *Butcher*, I believe the dangers of implementing a new map for the May 2018 primary election risks "[s]erious disruption of orderly state election processes and basic governmental functions." *Id.* It is naïve to think that disruption will not occur. Prospective candidates, incumbents and challengers alike, have been running for months, organizing, fundraising, seeking their party's endorsements, determining who should be on canvassing and telephone lists, as well as undertaking the innumerable other tasks implicit in any campaign - all with a precise understanding of the districts within which they are to run, which have been in place since 2011. The change of the districts' boundary lines at this time could result in candidates, again incumbents and challengers alike, no longer living in the districts where they have been carrying out these activities for a year or more. This says nothing of the average voter, who thought he knew his Congressperson and district, and now finds that all has changed within days of the circulation of nomination petitions.

In this regard, the 18th Congressional District in southwestern Pennsylvania is worthy of specific mention. A special election will be held there on March 13, 2018. If a new map is indeed implemented for the 2018 election, voters in this district would be electing a representative in March in one district while nomination petitions would be circulating for a newly-drawn district, which may or may not include the current candidates for the special election. Again and respectfully, I find the likelihood for confusion, if not chaos, militates strongly against my colleagues' admittedly admirable effort to correct the current map prior to the May 15, 2018 primary election.

Moreover, while the Court has set forth a timeline for resolution of this issue which theoretically allows for implementation of a new, constitutional map for the May primary election, this timeline will face immense and perhaps insurmountable pressure

through likely subsequent litigation. Regardless of the merit of any claims, litigation takes time, and under the proposed schedule, there is no time.

Finally, I do not favor the alternative of moving this year's primary election. It has been the tradition in Pennsylvania to hold a spring primary and a fall general election. This year, Pennsylvanians will elect a Governor, a Lieutenant Governor, a United States Senator, all of Pennsylvania's Congressional Representatives, one-half of the Pennsylvania Senate, and all of the Pennsylvania House of Representatives. We cannot determine the impact of moving a primary election from the timeframe it has long been held to a mid-summer substitute. I am uncomfortable risking aberrant results through such a departure.

Accordingly, I believe it more prudent to apply our holding in this case to the 2020 election cycle, which would allow ample time for our sister branches of government to comply with our holding with guidance from our forthcoming opinion, as well as providing candidates and their supporters the opportunity to campaign in their newly established districts, and, most importantly, to reduce the risk of voter confusion.

Having said all of this, I readily acknowledge the Court's commendable attempt to compress the process of correcting the map to conduct timely primary elections. I will cooperate with the Court as it pursues its admirable goal, so long as all involved receive due process. I cannot, however, join the PCO without this expression because of my concern that a well-intentioned effort can still produce an unsatisfactory process and conclusion.